# DEVLIN *v.* SCARDELLETTI ET AL.

No. 01–417.   Argued March 26, 2002—Decided June 10, 2002

1.

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed a dissenting opinion, in which KENNEDY and THOMAS, JJ., joined, *post*, p. 15.

*Thomas C. Goldstein* argued the cause for petitioner. With him on the briefs were *Erik S. Jaffe* and *Brian Wolfman.*

*Laurence Gold* argued the cause for respondents. With him on the brief were *Andrew D. Roth, David L. Shapiro, William F. Hanrahan,* and *Kenneth M. Johnson.*

*Patricia A. Millett* argued the cause for the United States et al. as *amici curiae* urging affirmance. On the brief were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Kneedler, Gregory G. Garre, Marleigh D. Dover, Irene M. Solet, David M. Becker, Jacob H. Stillman,* and *Eric Summergrad.**

JUSTICE O'CONNOR delivered the opinion of the Court.

Petitioner, a nonnamed member of a class certified under Federal Rule of Civil Procedure 23(b)(1), sought to appeal the approval of a settlement over objections he stated at the fairness hearing. The Court of Appeals for the Fourth Circuit held that he lacked the power to bring such an appeal because he was not a named class representative and because

---

*Briefs of *amici curiae* urging reversal were filed for the Council of Institutional Investors by *Mark C. Hansen* and *Neil M. Gorsuch*; and for Charles C. Yeomans by *Katherine K. Yunker.*

*Seth P. Waxman, Edward C. DuMont,* and *Christopher R. Lipsett* filed a brief for Citibank (South Dakota), N. A., as *amicus curiae* urging affirmance.

*Thaddeus Holt* filed a brief for Charles L. Grimes et al. as *amici curiae.*

he had not successfully moved to intervene in the litigation. We now reverse.

I

Petitioner Robert Devlin, a retired worker represented by the Transportation Communications International Union (Union), participates in a defined benefits pension plan (Plan) administered by the Union. In 1991, on the recommendation of the Plan's trustees, the Plan was amended to add a cost of living adjustment (COLA) for retired and active employees. As it turned out, however, the Plan was not able to support such a large benefits increase. To address this problem, the Plan's new trustees sought to freeze the COLA. Because they were concerned about incurring Employee Retirement Income Security Act of 1974 (ERISA) liability by eliminating the COLA for retired workers, see 29 U. S. C. § 1054(g)(1) (1994 ed.) (providing that accrued benefits "may not be decreased by an amendment of the plan"), the trustees froze the COLA only as to active employees. Because the Plan still lacked sufficient funds, the new trustees obtained an equitable decree from the United States District Court for the District of Maryland in 1995 declaring that the former trustees had breached their fiduciary duties and that ending the COLA for retired workers would not violate ERISA. *Scardelletti* v. *Bobo*, 897 F. Supp. 913 (Md. 1995); *Scardelletti* v. *Bobo*, No. JFM–95–52 (D. Md., Sept. 8, 1997). Accordingly, in a 1997 amendment, the new trustees eliminated the COLA for all Plan members.

In October 1997, those trustees filed the present class action in the United States District Court for the District of Maryland, seeking a declaratory judgment that the 1997 amendment was binding on all Plan members or, alternatively, that the 1991 COLA amendment was void. Originally, petitioner was proposed as a class representative for a subclass of retired workers because of his previous involvement in the issue. He refused to become a named representative, however, preferring to bring a separate action in

the United States District Court for the Southern District of New York, arguing, among other things, that the 1997 Plan amendment violated the Age Discrimination in Employment Act of 1967, 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.* (1994 ed. and Supp. V). The New York District Court dismissed petitioner's claim involving the 1997 amendment, which was later affirmed by the Second Circuit because:

> "The exact COLA issue that the appellants are pursuing . . . is being addressed by the district court in Maryland. . . . It seems eminently sensible that the Maryland district court should resolve fully the COLA amendment issue." *Devlin* v. *Transportation Communications Int'l Union,* 175 F. 3d 121, 132 (CA2 1999).

At the time petitioner's claim was dismissed, the District Court in Maryland had already conditionally certified a class under Federal Rule of Civil Procedure 23(b)(1), dividing it into two subclasses: a subclass of active employees and a subclass of retirees. On April 20, 1999, petitioner's attorney sent a letter to the District Court informally seeking to intervene in the class action. On May 12, 1999, petitioner sent another letter repeating this request. He did not, however, formally move to intervene at that time.

Also in May, the Plan's trustees and the class representatives agreed on a settlement whereby the COLA benefits would be eliminated in exchange for the addition of other benefits. On August 27, 1999, the trustees filed a motion for preliminary approval of the settlement. On September 10, 1999, petitioner formally moved to intervene pursuant to Federal Rule of Civil Procedure 24. On November 12, 1999, the District Court denied petitioner's intervention motion as "absolutely untimely." *Scardelletti* v. *Debarr,* 265 F. 3d 195, 201 (CA4 2001). It then heard objections to the settlement, including those advanced by petitioner, and, concluding that the settlement was fair, approved it. App. C to Pet. for Cert. 1–3.

Shortly thereafter, petitioner noted his appeal, challenging the District Court's dismissal of his intervention motion as well as its decision to approve the settlement. The Court of Appeals for the Fourth Circuit affirmed the District Court's denial of intervention under an abuse of discretion standard. 265 F. 3d, at 203–204. It further held that, because petitioner was not a named representative of the class and because he had been properly denied the right to intervene, he lacked standing to challenge the fairness of the settlement on appeal. *Id.*, at 208–210.

Petitioner sought review of the Fourth Circuit's holding that he lacked the ability to appeal the District Court's approval of the settlement. We granted certiorari, 534 U. S. 1064 (2001), to resolve a disagreement among the Circuits as to whether nonnamed class members who fail to properly intervene may bring an appeal of the approval of a settlement. Compare *Cook* v. *Powell Buick, Inc.*, 155 F. 3d 758, 761 (CA5 1998) (holding that nonnamed class members who have not successfully intervened may not appeal settlement approval); *Gottlieb* v. *Wiles*, 11 F. 3d 1004, 1008–1009 (CA10 1993) (same); *Guthrie* v. *Evans*, 815 F. 2d 626, 628–629 (CA11 1987) (same); *Shults* v. *Champion Int'l Corp.*, 35 F. 3d 1056, 1061 (CA6 1994) (same), with *In re PaineWebber Inc. Ltd. Partnerships Litigation*, 94 F. 3d 49, 53 (CA2 1996) (any nonnamed class member who objected at the fairness hearing may appeal); *Carlough* v. *Amchem Prods., Inc.*, 5 F. 3d 707, 710 (CA3 1993) (same); *Marshall* v. *Holiday Magic, Inc.*, 550 F. 2d 1173, 1176 (CA9 1977) (same).

## II

Although the Fourth Circuit framed the issue as one of standing, 265 F. 3d, at 204, we begin by clarifying that this issue does not implicate the jurisdiction of the courts under Article III of the Constitution. As a member of the retiree class, petitioner has an interest in the settlement that creates a "case or controversy" sufficient to satisfy the constitutional

requirements of injury, causation, and redressability. *Lujan v. Defenders of Wildlife,* 504 U. S. 555 (1992); see also *In re Navigant Consulting, Inc., Securities Litigation,* 275 F. 3d 616, 620 (CA7 2001).

Nor do appeals by nonnamed class members raise the sorts of concerns that are ordinarily addressed as a matter of prudential standing. Prudential standing requirements include:

> "[T]he general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U. S. 737, 751 (1984).

Because petitioner is a member of the class bound by the judgment, there is no question that he satisfies these three requirements. The legal rights he seeks to raise are his own, he belongs to a discrete class of interested parties, and his complaint clearly falls within the zone of interests of the requirement that a settlement be fair to all class members. Fed. Rule Civ. Proc. 23(e).

What is at issue, instead, is whether petitioner should be considered a "party" for the purposes of appealing the approval of the settlement. We have held that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz,* 484 U. S. 301, 304 (1988) *(per curiam).* Respondents argue that, because petitioner is not a named class representative and did not successfully move to intervene, he is not a party for the purposes of taking an appeal.

We have never, however, restricted the right to appeal to named parties to the litigation. In *Blossom v. Milwaukee & Chicago R. Co.,* 1 Wall. 655 (1864), for instance, we allowed a bidder for property at a foreclosure sale, who was not a

named party in the foreclosure action, to appeal the refusal of a request he made during that action to compel the sale. In *Hinckley* v. *Gilman, C., & S. R. Co.*, 94 U. S. 467 (1877), we allowed a receiver, who was an officer of the court rather than a named party to the case, to appeal from an order "relat[ing] to the settlement of his accounts," reasoning that "[f]or this purpose he occupies the position of a party to the suit." *Id.*, at 469. More recently, we have affirmed that "[t]he right of a nonparty to appeal an adjudication of contempt cannot be questioned," *United States Catholic Conference* v. *Abortion Rights Mobilization, Inc.*, 487 U. S. 72, 76 (1988), given the binding nature of that adjudication upon the interested nonparty.

JUSTICE SCALIA attempts to distinguish these cases by characterizing them as appeals from collateral orders to which the appellants *"were* parties." *Post,* at 16 (dissenting opinion). But it is difficult to see how they were parties in the sense in which JUSTICE SCALIA uses the term—those " 'named as a party to an action,' " usually " 'in the caption of the summons or complaint.' " *Post,* at 15 (quoting Restatement (Second) of Judgments § 34(1), p. 345 (1980); *id.,* Comment *a,* Reporter's Note, at 347). Because they were not named in the action, the appellants in these cases were parties only in the sense that they were bound by the order from which they were seeking to appeal.

Petitioner's interest in the District Court's approval of the settlement is similar. Petitioner objected to the settlement at the District Court's fairness hearing, as nonnamed parties have been consistently allowed to do under the Federal Rules of Civil Procedure. See Fed. Rule Civ. Proc. 23(e) ("A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs"); see also 2 H. Newberg & A. Conte, Class Actions § 11.55, p. 11–132 (3d ed. 1992) (explaining that Rule 23(e) entitles all class members

to an opportunity to object). The District Court's approval of the settlement—which binds petitioner as a member of the class—amounted to a "final decision of [petitioner's] right or claim" sufficient to trigger his right to appeal. See *Williams* v. *Morgan,* 111 U. S. 684, 699 (1884) (describing the cases discussed above). And like the appellants in the prior cases, petitioner will only be allowed to appeal that aspect of the District Court's order that affects him—the District Court's decision to disregard his objections. Cf. *supra,* at 6. Petitioner's right to appeal this aspect of the District Court's decision cannot be effectively accomplished through the named class representative—once the named parties reach a settlement that is approved over petitioner's objections, petitioner's interests by definition diverge from those of the class representative.

*Marino* v. *Ortiz, supra,* is not to the contrary. In that case, we refused to allow an appeal of a settlement by a group of white police officers who were not members of the class of minority officers that had brought a racial discrimination claim against the New York Police Department. Although the settlement affected them, the District Court's decision did not finally dispose of any right or claim they might have had because they were not members of the class.

Nor does considering nonnamed class members parties for the purposes of bringing an appeal conflict with any other aspect of class action procedure. In a related case, the Seventh Circuit has argued that nonnamed class members cannot be considered parties for the purposes of bringing an appeal because they are not considered parties for the purposes of the complete diversity requirement in suits under 28 U. S. C. § 1332. See *Navigant Consulting,* 275 F. 3d, at 619; see also *Snyder* v. *Harris,* 394 U. S. 332, 340 (1969). According to the Seventh Circuit, "[c]lass members cannot have it both ways, being non-parties (so that more cases can come to federal court) but still having a party's ability to litigate independently." 275 F. 3d, at 619. Nonnamed class mem-

bers, however, may be parties for some purposes and not for others. The label "party" does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.

Nonnamed class members are, for instance, parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them. See *American Pipe & Constr. Co.* v. *Utah,* 414 U. S. 538 (1974). Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation—to simplify litigation involving a large number of class members with similar claims—would be defeated. The rule that nonnamed class members cannot defeat complete diversity is likewise justified by the goals of class action litigation. Ease of administration of class actions would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction. See 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1755, pp. 63–64 (2d ed. 1986). Perhaps more importantly, considering all class members for these purposes would destroy diversity in almost all class actions. Nonnamed class members are, therefore, not parties in that respect.

What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court. Particularly in light of the fact that petitioner had no ability to opt out of the settlement, see Fed. Rule Civ. Proc. 23(b)(1), appealing the approval of the settlement is petitioner's only

means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court might find legally inadequate.

JUSTICE SCALIA rightly notes that other nonnamed parties may be bound by a court's decision, in particular, those in privity with the named party. See *post*, at 18. True enough. It is not at all clear, however, that such parties may not themselves appeal. Although this Court has never addressed the issue, nonnamed parties in privity with a named party are often allowed by other courts to appeal from the order that affects them. 5 Am. Jur. 2d, Appellate Review §265 (1995).

Respondents argue that, nonetheless, appeals from nonnamed parties should not be allowed because they would undermine one of the goals of class action litigation, namely, preventing multiple suits. See *Guthrie* v. *Evans*, 815 F. 2d, at 629 (arguing that allowing nonnamed class members' appeals would undermine a "fundamental purpose of the class action": "to render manageable litigation that involves numerous members of a homogenous class, who would all otherwise have access to the court through individual lawsuits"). Allowing such appeals, however, will not be as problematic as respondents claim. For one thing, the power to appeal is limited to those nonnamed class members who have objected during the fairness hearing. This limits the class of potential appellants considerably. As the longstanding practice of allowing nonnamed class members to object at the fairness hearing demonstrates, the burden of considering the claims of this subset of class members is not onerous.

### III

The Government, as *amicus curiae*, admits that nonnamed class members are parties who may appeal the approval of a settlement, but urges us nonetheless to require class members to intervene for -purposes of appeal. See Brief for

United States et al. as *Amici Curiae* 12–27. To address the fairness concerns to objecting nonnamed class members bound by the settlement they wish to appeal, however, the Government also asserts that such a limited purpose intervention generally should be available to all those, like petitioner, whose objections at the fairness hearing have been disregarded. Federal Rule of Civil Procedure 24(a)(2) provides for intervention as of right:

> "Upon timely application . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

According to the Government, nonnamed class members who state objections at the fairness hearing should easily meet these three criteria. For one thing, it claims, a settlement binding on them will establish the requisite interest in the action. Moreover, it argues, any intervention motion filed "within the time period in which the named plaintiffs could have taken an appeal" should be considered "timely filed" for the purposes of such limited intervention. *United Airlines, Inc.* v. *McDonald*, 432 U. S. 385, 396 (1977). Finally, it asserts, the approval of a settlement over a nonnamed class member's objection, and the failure of a class representative to appeal such an approval, should "invariably" show that the class representative does not adequately represent the nonnamed class member's interests on appeal. Brief for United States et al. as *Amici Curiae* 20.

Given the ease with which nonnamed class members who have objected at the fairness hearing could intervene for purposes of appeal, however, it is difficult to see the value of the Government's suggested requirement. It identifies only

a limited number of instances where the initial intervention motion would be of any use: where the objector is not actually a member of the settlement class or is otherwise not entitled to relief from the settlement, where an objector seeks to appeal even though his objection was successful, where the objection at the fairness hearing was untimely, or where there is a need to consolidate duplicative appeals from class members. *Id.*, at 23–25. In such situations, the Government argues, a district court can disallow such problematic and unnecessary appeals.

This seems to us, however, of limited benefit. In the first two of these situations, the objector stands to gain nothing by appeal, so it is unlikely such situations will arise with any frequency. JUSTICE SCALIA argues that if such objectors were undeterred by this fact at the time they filed their original objections, they will be undeterred at the appellate level. See *post*, at 21–22. This misunderstands the point. As to the first group—those who are not actually entitled to relief—one would not expect them to have filed objections in the district court in the first place. The few irrational persons who wish to pursue one round of meaningless relief will, we agree, probably be irrational enough to pursue a second. But there should not be many of such persons in any case. As for the second—those whose objections were successful at the district court level—they were far from irrational in the filing of their initial objections, and they should not generally be expected to lose this level of sensibility when faced with the prospect of a meaningless appeal. Moreover, even if such cases did arise with any frequency, such concerns could be addressed by a standing inquiry at the appellate level.

The third situation—dealing with untimely objections—implicates basic concerns about waiver and should be easily addressable by a court of appeals. A court of appeals also has the ability to avoid the fourth by consolidating cases rais-

ing duplicative appeals. Fed. Rule App. Proc. 3(b)(2). If the resolution of any of these issues should turn out to be complex in a given case, there is little to be gained by requiring a district court to consider these issues, which are the type of issues (standing to appeal, waiver of objections below, and consolidation of appeals) typically addressed only by an appellate court. As such determinations still would most likely lead to an appeal, such a requirement would only add an additional layer of complexity before the appeal of the settlement approval may finally be heard.

Nor do we agree with the Government that, regardless of the desirability of an intervention requirement for effective class management, the structure of the rules of class action procedure requires intervention for the purposes of appeal. According to the Government, intervention is the method contemplated under the rules for nonnamed class members to gain the right to participate in class action proceedings. We disagree. Just as class action procedure allows nonnamed class members to object to a settlement at the fairness hearing without first intervening, see *supra*, at 8–9, it should similarly allow them to appeal the District Court's decision to disregard their objections. Moreover, no federal statute or procedural rule directly addresses the question of who may appeal from approval of class action settlements, while the right to appeal from an action that finally disposes of one's rights has a statutory basis. 28 U. S. C. § 1291.

## IV

We hold that nonnamed class members like petitioner who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening. We therefore reverse the judgment of the Court of Appeals for the Fourth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE KENNEDY and JUSTICE THOMAS join, dissenting.

"The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino* v. *Ortiz*, 484 U. S. 301, 304 (1988) *(per curiam);* Fed. Rule App. Proc. 3(c)(1) ("The notice of appeal must . . . specify the party or parties taking the appeal"). This is one well-settled rule that, thankfully, the Court leaves intact. Other chapters in the hornbooks are not so lucky.

I

The Court holds that petitioner, a nonnamed member of the class in a class action litigated by a representative member of the class, is a "party" to the judgment approving the class settlement. This is contrary to well-established law. The "parties" to a judgment are those named as such— whether as the original plaintiff or defendant in the complaint giving rise to the judgment, or as "[o]ne who [though] not an original party . . . become[s] a party by intervention, substitution, or third-party practice," *Karcher* v. *May*, 484 U. S. 72, 77 (1987). As the Restatement puts it, "[a] person who is named as a party to an action and subjected to the jurisdiction of the court is a party to the action," Restatement (Second) of Judgments § 34(1), p. 345 (1980) (hereinafter Restatement); "[t]he designation of persons as parties is usually made in the caption of the summons or complaint but additional parties may be named in such pleadings as a counterclaim, a complaint against a third party filed by a defendant, or a complaint in intervention," *id.*, § 34, Comment *a*, Reporter's Note, at 347. As was the case here, the only members of a class who are typically named in the complaint are the class representatives; thus, it is only these members of the class, and those who intervene or otherwise enter through third-party practice, who are parties to the class judgment. This is confirmed by the application of those Federal Rules of Civil Procedure that confer upon

"parties" to the litigation the rights to take such actions as conducting discovery and moving for summary judgment, e. g., Fed. Rules Civ. Proc. 30(a)(1), 31(a)(1), 33(a), 34(a), 36(a), 45(a)(3), 56(a), 56(b), 56(e). It is undisputed that the class representatives are the only members of the class who have such rights.

Petitioner was offered the opportunity to be named the class representative, but he declined; nor did he successfully intervene. *Ante,* at 4, 5. Accordingly, he is not a party to the class judgment.

## A

The Court does not deny that, at least as a general matter, only those persons named as such are the "parties." Rather, it contends that persons "may be parties for some purposes and not for others," *ante,* at 10, and that petitioner is a party to the class judgment at least for the "purposes of appealing," *ante,* at 7.[1] The Court bases these contentions on three of our precedents, which it says stand for the proposition that "[w]e have never . . . restricted the right to appeal to named parties to the litigation." *Ibid.* These precedents stand for nothing of the sort.

All of these precedents are perfectly consistent with the rule that only named parties to a judgment can appeal the judgment because they involved appeals not from judgments but from collateral orders. The appellants were allowed to appeal from the collateral orders to which they *were* parties,

---

[1] The Court provides only one other example of a purpose for which a nonnamed class member is purportedly a "party": we have, it says, tolled the statute of limitations for such a person between the time the class action is filed and the time class certification is denied. *Ante,* at 10 (citing *American Pipe & Constr. Co.* v. *Utah,* 414 U. S. 538 (1974)). Not even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified.* Brief for Petitioner 24–26. This lonesome example is, in other words, entirely irrelevant to the question of party status.

even though they were *not* named parties to (and hence would not have been able to appeal from) the underlying judgments. We made this distinction between appealing the judgment and appealing a collateral order quite explicit in *Blossom* v. *Milwaukee & Chicago R. Co.*, 1 Wall. 655 (1864). In that case, the appellant was not a named party to the underlying foreclosure decree, from which it was therefore "certainly true that he [could not] appeal," yet he was a party (obviously, as the movant) to the motion he filed asking the court to complete the foreclosure sale, and therefore could appeal from *the order denying that motion. Ibid.* Our decisions in *Hinckley* v. *Gilman, C., & S. R. Co.*, 94 U. S. 467 (1877), and *United States Catholic Conference* v. *Abortion Rights Mobilization, Inc.*, 487 U. S. 72 (1988), are to the same effect. In the former, the appellant was not a named party to the underlying foreclosure decree, from which we said he "cannot and does not attempt to appeal," but he was obviously a party to the collateral order directing him by name to transfer funds to the court, from which we said he could appeal. 94 U. S., at 469. In the latter, witnesses who had been dismissed as named parties to the underlying litigation, 487 U. S., at 75, were allowed to appeal from a collateral order holding them in contempt for their failure to comply with a subpoena addressed to them (and to which they were therefore obviously parties), *id.*, at 76. These cases demonstrate why, even though petitioner should not be able to appeal the District Court's judgment approving the class settlement, there is no dispute that petitioner could (and did) appeal the District Court's collateral order denying his motion to intervene; as the movant, he was a party to the latter. See *Marino*, 484 U. S., at 304 ("[S]uch motions are, of course, appealable").[2]

---

[2] The Court finds it "difficult" to understand how the appellants in these cases can be considered parties in the traditional sense because they were not named in the "summons or complaint." *Ante*, at 8 (internal quotation marks omitted). Quite so. Our whole point *is* that, in order to appeal a

## B

The Court's other grounds for holding that petitioner is a party to the class judgment are equally weak. First, it contends that petitioner should be considered a party to the judgment because, as a member of the class, he is bound by it. *Ante,* at 10 ("What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement"). This will come as news to law students everywhere. There are any number of persons who are not parties to a judgment yet are nonetheless bound by it. See Restatement § 41(1), at 393 (listing examples); *id.,* § 75, Comment *a,* at 210 ("A person is bound by a judgment in an action to which he is not a party if he is in 'privity' with a party"). Perhaps the most prominent example is precisely the one we have here. Nonnamed members of a class are bound by the class judgment, even though they are not parties to the judgment, because they are represented by class members who are parties:

> "A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is . . . [t]he representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member." *Id.,* § 41(1)(e), at 393.

Accord, *id.,* § 75, Comment *a,* at 210 ("Persons bound through representation by virtue of a relationship with a party are to be contrasted with persons bound by a judgment because they are parties . . ."). Petitioner here, in the words of the Restatement, "is not a party" but "is bound by [the] judg-

---

collateral order, one need not be a party to the underlying litigation (and therefore need not be named in the complaint giving rise to that litigation), but need only be a party to the *collateral proceedings* (and therefore need only be named in the filings giving rise to those proceedings).

ment as though he were a party." Because our "well-settled" rule allows only "parties" to appeal from a judgment, petitioner may not appeal the class settlement.[3]

Second, the Court contends that petitioner should be considered a party to the judgment because he filed an objection to the class settlement. We have already held, however, that filing an objection does *not* make one a party if he does not also intervene. *Marino, supra,* at 304.

## II

The most pernicious aspect of today's decision, however, is not its result, but its reasoning. I mentioned in a recent dissent the Court's "penchant for eschewing clear rules that might avoid litigation," *US Airways, Inc.* v. *Barnett,* 535 U. S. 391, 412 (2002). Today's opinion not only eschews such

---

[3] The Court contends that those in privity with the parties to a judgment are "often allowed by other courts" to appeal by mere virtue of the fact that they are bound by the judgment. *Ante,* at 11 (citing 5 Am. Jur. 2d § 265 (1995)). I should think that the significant datum on this point is not that such appeals have been "often allowed by other courts," but that they have *never* been allowed by this Court. Indeed, the "other courts" whose opinions are cited by the authority on which the Court relies consist *entirely* of state courts, with the exception of one federal case decided before our decision in *Marino* v. *Ortiz,* 484 U. S. 301 (1988) *(per curiam),* which affirmed the "well-settled" rule that in federal court "only parties to a lawsuit . . . may appeal an adverse judgment." *Id.,* at 304. While this difference between the procedures of federal and state courts seemingly escapes the Court's attention, it was well enough recognized (and the clear federal rule acknowledged) in the very next paragraph of the American Jurisprudence annotation on which the Court relies:

"*Caution:* Applicable rules of procedure may bar a nonparty from taking an appeal notwithstanding his or her interest in the subject matter of the case. Thus, the United States Supreme Court has, under the Federal Rules of Appellate Procedure, rejected the principle of permitting appeal by a nonparty who has an interest affected by the trial court's judgment, stating that the better practice is for such nonparty to seek intervention for the purposes of appeal." 5 Am. Jur. 2d, Appellate Review § 265, at 40 (citing *Marino, supra*).

a rule; it destroys one that previously existed. It abandons the bright-line rule that only those persons named as such are parties to a judgment, in favor of a vague inquiry "based on context." *Ante*, at 10 ("The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context"). Although the Court does not say how one goes about selecting the result-determinative "context" for its oh-so-sophisticated new inquiry, I gather from its repeated invocation of this phrase that the relevant context in the present case is the "goals of class action litigation," *ante*, at 10, 11. This means, I suppose, that, in a labor case, who are the parties to a judgment will depend on the goals of the labor laws, and, in a First Amendment case, who are the parties to a judgment will depend on the goals of the First Amendment. Or perhaps not.

What makes this exponential increase in indeterminacy especially unfortunate is the fact that it is utterly unnecessary. Despite the Court's assertion in one breath that treating nonnamed class members as parties is the "only means" by which they would not be "deprive[d] . . . of the power to preserve their . . . interests," *ante*, at 10, the Court in the next breath concedes that there is another—and very easy—means for nonnamed class members to do just that: becoming parties to the judgment by moving to intervene. *Ante*, at 12 (noting "the ease with which nonnamed class members who have objected at the fairness hearing could intervene for purposes of appeal"). The Court does not dispute that nonnamed class members will typically meet the requirements for intervention as of right under Federal Rule of Civil Procedure 24, including intervention only for the purpose of appeal, and even after the class judgment has been entered.[4] *Ante*, at 11–12.

---

[4] It is true that petitioner's motion to intervene was denied as untimely by the District Court. Even if this decision was correct, a question on which petitioner did not seek certiorari, it does not cast doubt on the

The Court *does* dispute whether there is any "value" in requiring nonnamed class members who object to the settlement to intervene in order to take an appeal. *Ante,* at 12. In my view, avoiding the reduction to indeterminacy of the hitherto clear rule regarding who is a party is "value" enough. But beyond that, it makes sense to require objectors to intervene before appealing, for the reason advanced by the Government: to enable district courts "to perform an important screening function." Brief for United States et al. as *Amici Curiae* 23. For example, when considering whether to allow an objector to intervene, a district court can verify that the objector does not fall outside the definition of the settlement class and is otherwise entitled to relief in the class action, that the objection has not already been resolved in favor of the objector in the approved settlement, and that the objection was presented in a timely manner. *Id.,* at 23–24. The Court asserts that there is no "value" to these screening functions because a court of appeals can pass on those matters just as easily, and in any event an objector who is unable to obtain relief from the class settlement will not seek to appeal "with any frequency," as he "stands to gain nothing by appeal." *Ante,* at 13.

As to the last point: The person who has nothing to gain from an appeal also had nothing to gain from filing his objection in the first place, but was undeterred (as many are), see, *e. g., Shaw* v. *Toshiba American Information Systems, Inc.,* 91 F. Supp. 2d 942, 973–974, and nn. 17–18 (ED Tex. 2000). The belief that meritless objections, undeterred the first time, will be deterred the second, surely suggests the tri-

---

ability of the ordinary nonnamed class member to intervene for purposes of appeal. Petitioner was *not* the ordinary nonnamed class member seeking intervention for purposes of appeal. He moved to intervene *generally,* Brief for Petitioner 6, despite having rejected invitations to participate in the litigation until after the settlement was preliminarily approved.

umph of hope over experience.[5]   And as for the suggestion that the court of appeals can pass on these questions just as easily: Since when has it become a principle of our judicial administration that what *can* be left to the appellate level *should* be left to the appellate level?   Quite the opposite is true.   District judges, who issue their decrees in splendid isolation, can be multiplied *ad infinitum.*   Courts of appeals cannot be staffed with too many judges without destroying their ability to maintain, through en banc rehearings, a predictable law of the circuit.   In any event, the district court, being intimately familiar with the facts, *is* in a better position to rule initially upon such questions as whether the objections to the settlement were procedurally deficient, late filed, or simply inapposite to the case.   If it denies interventions on such grounds, and if the denials are not appealed, the court of appeals will be spared the trouble of considering those objections altogether.   And even when the denials are appealed, the court of appeals will have the benefit of the district court's opinion on these often fact-bound questions. (Typically, the only occasion the district court would have had to pass on these questions is in the course of considering the motion to intervene; when considering whether to approve the class settlement, district courts typically do not treat objections individually even on substance, let alone form.   *E. g., id.,* at 973–974.)   Finally, it is worth observing that the Court's assertions regarding the merits of allowing objectors to appeal a class settlement without intervening apply with equal force to the objectors who sought to appeal

---

[5] The Court assures us that these appeals will be "few" because, like the objections on which they are based, they are "irrational." *Ante,* at 13.   To say that the substance of an objection (and of the corresponding appeal) is irrational is not to say that it is irrational to make the objection and file the appeal.   See *Shaw,* 91 F. Supp. 2d, at 973–974, and n. 18 (noting " 'canned' objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests"). The Court cites nothing to support its sunny surmise that the appeals will be few.

the class judgment in *Marino*. Yet there we concluded (no doubt for the reasons discussed above) that "the better practice" is to require objectors "to seek intervention for purposes of appeal." 484 U. S., at 304.

For these reasons, I would affirm the Court of Appeals.