In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-4316

JOHN DANIELS, MANUEL SANCHEZ,
TIMOTHY HOFFMAN, et al.,

*Plaintiffs-Appellees*,

*v.*

WAYNE BURSEY, MELLON TRUST OF
NEW YORK, PRUDENTIAL INSURANCE
COMPANY OF AMERICA, et al.,

*Defendants-Appellees*.

APPEAL OF:

JOHN J. KORESKO, V.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 1550—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED SEPTEMBER 28, 2005—DECIDED NOVEMBER 29, 2005

———————

Before FLAUM, *Chief Judge*, and MANION and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Sanchez & Daniels, a Chicago law firm, along with several of its partners and employees filed a putative class action suit against administrators and insurers of a benefit fund, alleging that defen-

dants fraudulently marketed and administered the fund. Before a class was certified, the parties agreed to a settlement. John J. Koresko, an attorney for plaintiffs, filed an appeal on his own behalf and on behalf of putative class members, objecting to the settlement and challenging certain rulings by the district court. Because we conclude that Koresko and the putative class members are not parties to this litigation, thus lacking the capacity to appeal, we dismiss the appeal.

## I.

Sanchez & Daniels enrolled in a "severance trust executive program" ("STEP") in 1995 to provide benefits for its employees. In the complaint, Sanchez & Daniels named more than twenty defendants that were involved in marketing, administering, or insuring the STEP plan. Various defendants allegedly promoted the STEP plan as a tax deductible program, which would provide participants with death, disability, and severance benefits, while keeping the funds safe from creditors. These attributes were designed to attract and benefit high income owner-employees.

In 1997, the Internal Revenue Service audited another STEP plan participant, Costal Neurological Surgery Medical Group, that had taken deductions for its contributions to the plan. The audit resulted in proceedings before the United States Tax Court. On February 6, 2001, contrary to the marketing of the plan, the Tax Court accepted a stipulation by Costal admitting that the plan was not tax deductible and disallowing approximately 75 percent of the deductions.

After the Tax Court's ruling, on March 28, 2001, Sanchez & Daniels attempted to withdraw from the plan. Responding to concerns from a number of plan participants, includ-

ing Sanchez & Daniels, the STEP plan administrator wrote to all the employers who were participating in 2002. The letter described the only two options for withdrawal from the plan: participants could terminate affiliation with the plan by forfeiting twenty percent of the plan assets, or participants could forfeit ten percent of the plan assets if they transferred the assets into a particular new plan that provided only death benefits. Sanchez & Daniels rejected both options. Instead, the firm's attorney, John J. Koresko, demanded that the firm's plan assets be transferred to a new, independent plan.

Litigation soon commenced, culminating in proceedings in the Northern District of Illinois.[1] In this case, Sanchez & Daniels alleged that defendants, through the financial structuring, marketing, and administration of the STEP plan, violated the Employee Retirement Income Security Act, the Racketeer Influenced and Corrupt Organizations Act, as well as various state statutes and common law.

Koresko filed a motion for leave to appear *pro hac vice* in the Northern District of Illinois on behalf of plaintiffs, which the plan administrative defendants opposed. Defendants

---

[1] Before this case was filed, the plan administrators sued Sanchez & Daniels and Koresko, as an individual, in the District of Connecticut, claiming that the firm had forfeited its plan assets and that Koresko had defamed the plan. Sanchez & Daniels, individually and on behalf of similarly situated participants, filed complaints against plan administrators and plan insurers in Pennsylvania state court, which was removed to the Eastern District of Pennsylvania before being voluntarily dismissed so the parties could proceed in Chicago. This case was then filed in Circuit Court of Cook County, and then removed to the Northern District of Illinois.

claimed that because Koresko served as the Chief Executive Officer of Penn-Mont Benefit Services, Incorporated, he was a competitor of the plans. As a competitor, defendants argued, Koresko should not be given access to records through the litigation that Koresko could use to his advantage in the marketplace. The district court permitted Koresko's appearance, although the court noted that Koresko's "status as a competitor" may warrant limiting his access to discovery materials. Along with Koresko, plaintiffs were also represented by other counsel.

As the case developed, plaintiffs and defendants began to discuss settlement with the assistance of a magistrate judge. While settlement negotiations were proceeding, Koresko filed a motion to withdraw, claiming a conflict of interest with plaintiffs. Plaintiffs opposed his withdrawal. Because of his pending motion to withdraw, Koresko chose not to participate in the settlement discussions and endeavored unsuccessfully to delay the negotiations until after the resolution of his motion.

On September 8, 2004, the named plaintiffs and defendants reached a settlement. As part of the settlement, plaintiffs moved to amend their complaint to eliminate all class claims. Koresko, apparently representing the uncertified class members and his own interests, objected to the withdrawal of the class claims and to the settlement. He also moved for a preliminary injunction, appointment of a receiver, and expedited discovery, and filed an appearance on behalf of putative class members, Robert Schmier and Schmier and Feurring Properties, Incorporated (collectively "Schmier"). Plaintiffs disavowed Koresko's motions. After a hearing, the district court permitted the amendment to eliminate the class claims and denied as moot the motion for class certification. Since the settlement did not encompass

any class claim, the district court determined that court approval of the settlement was not necessary. The district court therefore granted the motions by both parties to voluntarily dismiss their claims and entered judgment on October 26, 2004. Koresko filed this appeal on his own behalf and on behalf of the putative class, including Schmier.

## II.

As a threshold issue, we must determine whether Koresko and the putative class have the capacity to bring this appeal. Although the parties have framed this issue as one of standing, the preliminary question is whether appellants Koresko and Schmier are parties to the litigation. *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002) ("What is at issue, instead [of standing], is whether petitioner should be considered a 'party' for the purposes of appealing the approval of the settlement."); *see also Korczak v. Sedeman*, 427 F.3d 419, 422 (7th Cir. 2005); *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 572 (9th Cir. 2004) ("the issue is not precisely one of standing. . . . Instead, the inquiry is best characterized as concerning the definition of a 'party' for purposes of appeal." (citing *Devlin*, 536 U.S. at 7)). A party has the capacity to bring an appeal, but a nonparty does not. *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("[t]he rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.") (citation omitted); Fed. R. App. P. 3(c) ("The notice of appeal must [ ] specify the party or parties taking the appeal . . .")). Neither Koresko nor Schmier was named as a party in the litigation, nor did either move to intervene before the district court. Furthermore, the district court never certified a class, so they are not members of a certified class. Thus, at least in the traditional sense, appellants are not parties.

Nonetheless, in limited circumstance Koresko and Schmier may be treated as "parties," and therefore have the capacity to appeal, even if they are not formally recognized as such. *Devlin*, 536 U.S. at 7 (noting that the Supreme Court has "never . . . restricted the right to appeal to *named* parties to the litigation" (emphasis added)). The Supreme Court instructed that "[w]hat is most important" to determining whether individuals are "parties" to an action is "the sense of being bound by the settlement." *Id.* at 10.

Because the class was not certified, Koresko and Schmier have no capacity to appeal just because they are members of a putative class. They may, however, still have the capacity to appeal if the settlement agreement binds them. To determine that possibility, we consider the settlement agreement, which has been filed under seal. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*, 313 F.3d 70, 81-82 (2d Cir. 2002) ("To determine who may appeal, courts must ascertain whether putative appellants are 'bound by the order from which they were seeking to appeal.'" (citing *Devlin*, 536 U.S. at 8)). Without disturbing the confidentiality of the settlement, we note the following. The settlement agreement is between only the named plaintiffs and defendants. No class claims are resolved by the settlement. While the language suggests that the parties considered and anticipated actions that Koresko might take, Koresko is not bound by the agreement. Addressing contingencies is distinct from binding a third party. Koresko remains free to file a class action or his own claim. In fact, Koresko is currently litigating a fee dispute in a separate action that is pending before the district court. *See Sanchez & Daniels v. Koresko*, No. 04-5183 (N.D. Ill. filed Aug. 5, 2004).

Because no settlement agreement binds Koresko or the putative class, Koresko and Schmier are not in the same

circumstances as the unnamed certified class member who was permitted to appeal in *Devlin*. Since a class was never certified, appellants were not members of a class, and therefore could not be bound. *See AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1310 (11th Cir. 2004) ("Persons who are not class members are not bound at all."). Even the dissent in *Devlin* noted that, "[n]ot even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*." *Id.* at 16 n.1 (Scalia, J. dissenting). Thus, *Devlin* does not extend to the appellants in this case.

Koresko attempts to create a theory under ERISA by inviting this court to determine that an attorney for a putative class has a fiduciary duty that elevates his status to that of a party. Koresko cites to *Culver v. City of Milwaukee*, 277 F.3d 908, 910 (7th Cir. 2002), for the proposition that a class action lawyer is the "real plaintiff in interest." In *Culver*, however, this statement was made in the context of illustrating "the danger that the lawyer will sell out the class in exchange for the defendant's tacit agreement not to challenge the lawyer's fee request." *Culver*, 277 F.3d at 910 (citations omitted). The *Culver* case does not hold that a class action attorney is a party; rather, *Culver* suggests the precarious nature of such a proposition and notes that "the courts and Congress have balked" at considering a class lawyer as "the true plaintiff." *Id.* at 913. Accordingly, we decline to equate an attorney's role as a fiduciary of a class to that of a party.

### III.

Since Koresko and Schmier are not bound by the settlement agreement, they do not qualify as parties to the

litigation. Accordingly, appellants lack the capacity to appeal, and we therefore DISMISS the appeal.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*