In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1442

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*v.*

FRANK J. CUSTABLE, JR., *et al.,*

*Defendants.*

APPEAL OF BRAD HARE.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 2182 — **Sharon Johnson Coleman**, *Judge.*

ARGUED JULY 8, 2015 — DECIDED JULY 28, 2015

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* In 2003 the SEC filed a civil suit against Frank Custable, the principal defendant in this appeal and the only one we need discuss, charging him with fraud involving "penny stocks." The term refers to very cheap stocks (no more than $5 per share). The typical penny-stock fraud involves the purchase of quantities of penny

stocks and their resale to gullible investors at inflated prices. See generally "Penny Stock," *Wikipedia*, https://en.wiki pedia.org/wiki/Penny_stock#Regulation (visited July 24, 2015). Custable's fraud was alleged to have yielded him at least $4 million.

The civil suit was interrupted by criminal proceedings that resulted in a long prison sentence for Custable. But eventually the civil suit resumed and in 2010 he consented to the entry of a judgment against him that ordered him to pay a $120,000 penalty plus $6.4 million in disgorgement of profits. See 15 U.S.C. § 78u(d)(5); *SEC v. Lipson*, 278 F.3d 656, 662–63 (7th Cir. 2002). The penalty, imposed pursuant to 15 U.S.C. § 78u(d)(3), was to be paid to the U.S. Treasury "except as otherwise provided in [15 U.S.C. §] 7246" and another section not relevant here: § 78u(d)(3)(C)(i). Section 7246(a) provides that "the amount of such civil penalty shall, on the motion or at the direction of the [Securities and Exchange] Commission, be added to and become part of a disgorgement fund or other fund established for the benefit of the victims of such violation." See *Official Committee of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 76 (2d Cir. 2006). The SEC is thus authorized either to remit the penalty money (the $120,000) to the Treasury or to place it in the same fund as the disgorged profits. It decided on the former.

The civil judgment permitted the Commission to submit to the district court for approval a disbursement plan for those profits—more precisely for so much of the profits as could be found and seized. Deciding that locating the defrauded victims wouldn't be feasible, the Commission asked the district court to allow it to pay to the Treasury all the disgorged profits that it had recovered (slightly more than

$500,000—a small fraction of the total profits of $6.4 million that the SEC would have liked to recover). The Commission explained that distributing the funds to the victims was in-feasible because there were so many of them, there was so little money in the fund, and the fraud was so old—it had begun in 2001.

Enter the appellant, Brad Hare. Though not a party in the district court—he did not move to intervene—he claimed to have an interest in the fund and asked the district court to allow him to respond to any motion to disburse money from it. The judge quite properly refused to permit Hare, a non-party, to participate in the litigation. But at the same time the judge considered and rejected Hare's argument that he was entitled to money in the fund, and granted the SEC's motion to disburse the entire fund to the Treasury.

Whether or not the SEC should have been allowed to de-ny the victims of the fraud compensation from the fund is actually a side issue, because Hare was not a victim. True, he claimed to have been defrauded by Custable before 2001, but that fraud had had nothing to do with penny stocks. Hare's contention was that he had gone into business with Custable and that the latter had fraudulently diverted assets of the business to himself. Hare had brought a separate suit against Custable, based on the earlier fraud, which they settled in 2014 with Custable agreeing to pay Hare almost $4.5 mil-lion—which Custable, sentenced to prison for more than 20 years, didn't have.

Hare appeals from the district court's order allowing the SEC to give the Treasury the money in the fund intended for victims of the penny-stock fraud. As a victim of a Custable fraud, holding a large uncollectible judgment against him,

Hare contends that he's a worthier recipient of assets of the fund than the Treasury.

There is a serious—in fact dispositive—question whether we can hear this appeal. Hare was not a party in the district court, and ordinarily only a party can appeal, *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002); *In re Bergeron*, 636 F.3d 882, 883 (7th Cir. 2011); *Bloom v. FDIC*, 738 F.3d 58, 62 (2d Cir. 2013), though there are exceptions—for example, a member of a class in a class action suit can appeal even if he is not one of the named plaintiffs. *Devlin v. Scardelletti*, *supra*, 536 U.S. at 14. Hare might be thought to qualify for a different, a novel, exception. He could have become a party in the district court only if he'd moved to intervene in that court and the court had granted the motion, which was highly unlikely, because Hare was not a victim of the penny-stock fraud. Still, had he moved to intervene he could have appealed from the denial of that motion—and if instead the district judge had granted the motion but then denied Hare relief on the merits, that ruling too would have set the stage for an appeal. So it's not true that his only route to possible relief was to appeal the order handing over the fund to the Treasury, albeit the order extinguished any possibility of his collecting his judgment against Custable from money in the fund. Given what Hare wants—a shot at the disgorged-profits fund—his failure to have sought intervention is incomprehensible.

He makes two arguments for our allowing him to appeal nevertheless. They're unattractive arguments, both in their own right as we're about to see and because moving to intervene would have been the proper way to get the case to us. Hare claims to be an indirect victim of the penny-stock

fraud, because, he contends, the commission of the fraud was financed in part by the money that Custable had obtained by his fraud against Hare. Hare's other argument is that while the claims of the penny-stock victims may be too numerous and stale to be worth trying to sort out and compensate from the fund, as the SEC contended successfully in the district court, *his* claim is large and its amount liquidated: it is the amount stated in his settlement agreement with Custable. Of course Custable, being penniless (pun intended) now and in the foreseeable future, couldn't have cared very much what he was agreeing to pay Hare. But since the district court (another district judge, in Hare's suit against Custable) approved the agreement, we'll assume that the amount of the settlement is reasonable, though as it far exceeds the disgorged-profits fund there is no way for Hare to obtain from the fund more than a pittance of what Custable has agreed to pay him. Hare's second argument is factually strong, but legally weak because if he isn't a victim of the penny-stock fraud it doesn't matter how large and certain his claim for damages caused by a different fraud is.

As for the first, the indirect-victim claim, only if it were a certainty that the district judge would not have granted Hare's motion to intervene and that we would not have reversed her order denying his motion would an appeal from the district court's order turning over the entire fund to the Treasury be the only avenue of relief open to him. In such circumstances of futility of trying to intervene, an appeal by a nonparty may be permissible. E.g., *In re Bergeron*, *supra*, 636 F.3d at 883; *SEC v. Enterprise Trust Co.*, 559 F.3d 649, 651–52 (7th Cir. 2009). But the posited "circumstances" are speculative in the extreme. And anyway Hare's indirect-victim argument makes no sense. It implies that Hare helped finance,

albeit unintentionally, Custable's fraud against the purchasers of penny stocks—the money that Custable stole from Hare was used to finance the penny-stock fraud! Far from being a victim of the penny-stock fraud, Hare was an unwitting tool of the perpetrator. It would be absurd to think that he could claim money as a victim of a scheme which, however unwittingly, he had assisted in creating—especially since *he* was not a victim of *that* scheme.

We can imagine, if barely, Hare's making a cy pres argument for obtaining money from the fund in order to recoup part of his loss from the fraud that Custable committed against him. The money paid into the court account was money that should in principle have gone to the victims of the penny-stock fraud; and when for some reason it's infeasible to distribute the entire amount of a defendant's wrongful gains to the victims of the defendant's wrongdoing (maybe because the victims can't be located, a feature of this case), the cy pres doctrine allows the court to award the leftover money to some person or institution that has a claim or need similar to that of the uncompensatable victims. And one might think of Hare in that light—a victim of the same criminal, yet a victim who unlike the other victims (i.e., the victims of the penny-stock fraud) *can* feasibly be compensated from the fund that holds the criminal's ill-gotten gains.

But Hare doesn't invoke cy pres, which probably is anyway unavailable given the district court's authority to bypass victims of a fraud and send the disgorged profits and the penalty to the U.S. Treasury. See *FTC v. Febre*, 128 F.3d 530, 537 (7th Cir. 1997); *SEC v. Cavanagh*, 445 F.3d 105, 116–17 (2d Cir. 2006); *SEC v. Blavin*, 760 F.2d 706, 712–13 (6th Cir. 1985). The implication is that Congress made payment to the

Treasury the cy pres alternative ("cy pres" means literally "nearly like" or "as near as") to payment to victims of fraud when payment to the victims is infeasible.

That isn't the only reason a cy pres argument would have failed in this case. The usual recipient of cy pres money is a charity, *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 675–76 (7th Cir. 2013), and the money is supposed to be used, to the extent feasible, for the benefit of victims of the defendant's wrongdoing. *Holtzman v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013). Hare is not a victim of the relevant wrongdoing, is not a charity, and has never intimated that he would use even one penny of any money that he obtained from the victims' fund to help the defrauded penny-stock investors.

Hare has failed to establish that he is within an exception to the rule that forbids a nonparty to appeal. And the grounds that he advances for relief are in any event frivolous. His appeal is therefore dismissed. *Gautreaux v. Chicago Housing Authority*, 475 F.3d 845, 850–51, 853 (7th Cir. 2007).