

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-24-2003

# In Re Orthopedic

Precedential or Non-Precedential: Precedential

Docket No. 02-3978

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"In Re Orthopedic " (2003). *2003 Decisions.* Paper 74.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/74

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 24, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3978

IN RE: ORTHOPEDIC BONE SCREW PRODUCTS
LIABILITY LITIGATION
(MDL No. 1014)

*DANIEL FANNING, on behalf of himself and all others
similarly situated; *MARGARET SCHMERLING, on behalf
of herself and all others similarly situated

v.

*ACROMED CORPORATION;
*GIBRALTER NATIONAL INSURANCE
(Intervenor in District Court)
*(D.C. Civil No. 97-cv-00381)

Joyce Custer, Robert Deniken,
Rebecca Hill, Marie Wells Iacono,
Katherine D. Morris and Brenda Willette,

Appellants

*(Amended in accordance with Clerk's Order
dated 01/03/03)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
MDL No. 1014 and D.C. Civil Action No. 97-cv-00381
(Honorable Ronald L. Buckwalter)

Argued: July 29, 2003

Before: SCIRICA, *Chief Judge*, RENDELL and AMBRO,
*Circuit Judges*

(Filed November 24, 2003)

> BRIAN S. WOLFMAN, ESQUIRE
>  (ARGUED)
> Public Citizen Litigation Group
> 1600 20th Street, N.W.
> Washington, D.C. 20009
>
>    Attorney for Appellants
>
> ARNOLD LEVIN, ESQUIRE
> FRED S. LONGER, ESQUIRE
> Levin, Fishbein, Sedran & Berman
> 510 Walnut Street, Suite 500
> Philadelphia, Pennsylvania 19106
>
> JOHN J. CUMMINGS, III, ESQUIRE
> Cummings, Cummings &
>  Dudenhefer
> 416 Gravier Street
> New Orleans, Louisiana 70130
>
>    Attorneys for Appellees,
>    Plaintiffs' Class and Plaintiffs'
>    Legal Committee
>
> RICHARD I. WERDER, JR.,
>  ESQUIRE (ARGUED)
> Jones Day
> North Point
> 901 Lakeside Avenue
> Cleveland, Ohio 44114
>
>    Attorney for Appellee,
>    AcroMed Corporation

---

**OPINION OF THE COURT**

---

SCIRICA, *Chief Judge*.

At issue is application of an indemnification clause in a $100 million Fed. R. Civ. P. 23(b)(1)(B) class action settlement involving class members implanted with orthopedic bone screws. This is an appeal of a District Court order permitting defendant AcroMed Corporation to

be indemnified, with money from a fixed settlement fund, for costs associated with related individual cases. We will affirm.

I.

A.

This appeal is brought by six class members—termed "Custer Objectors" after the first-listed appellant, Joyce Custer—who have valid claims for compensation from the settlement fund. The objectors challenge the application of an indemnity provision that was included in the class action settlement.

Appellee, AcroMed, is one of several bone screw manufacturers that were defendants in Multidistrict Litigation 1014. In 1996, AcroMed reached agreement with the Plaintiffs' Legal Committee. A class action complaint was filed together with the proposed settlement. In 1997, the District Court certified the class for settlement purposes and approved the settlement. *In re Orthopedic Bone Screw Prod. Liab. Litig. (Fanning)*, 176 F.R.D. 158 (E.D. Pa. 1997). An appeal of the settlement was voluntarily dismissed, rendering the District Court's order final and unappealable.

The certified class included all persons having a claim against AcroMed relating to bone screws that were implanted anywhere in the United States before December 31, 1996. Finding that AcroMed's potential resources to settle claims were sufficiently restricted that they amounted to a "limited fund," the District Court certified the class under Fed. R. Civ. P. 23(b)(1)(B), as a non-opt-out class. The settlement provided the only avenue for recovery for class members subject to the settlement, who were enjoined from bringing individual actions.

The settlement specified $100 million, plus certain insurance proceeds, for payment of settled claims. The District Court approved this figure largely because of its finding that AcroMed was worth $104 million, based on what a willing buyer would pay for the company independent of the financial constraints and uncertainty

associated with the bone screw litigation. The District Court found the $100 million fund amount to represent the upper limit of what AcroMed could afford.[1]

The agreement included an indemnification provision, permitting AcroMed to request money from the settlement fund for defending certain related lawsuits. It provides:

> AcroMed . . . will be indemnified by the AcroMed Settlement Fund, by appropriate petition to the Court, for all reasonable costs and services incurred in defending, settling, or satisfying judgments entered in any claims or proceedings involving Settled Claims of Settlement Class Members . . . that are not terminated as a result of this Agreement or that are filed in the future despite this Agreement.

The agreement also provided for a "Settlement Contingency Fund" to ensure that, as the settlement fund was depleted, sufficient funds would be set aside to protect AcroMed's indemnification rights for costs associated with related lawsuits.

In approving the settlement, the District Court stressed limiting indemnification under these provisions, noting that the purpose of the agreement was to maximize recovery for the class members. Under the indemnification provision, AcroMed is only granted the right to *request* payment, while the District Court retains ultimate discretion to determine whether indemnification is appropriate. The District Court further stated that the provision's indemnification of "reasonable costs" would be "given a strict and narrow construction upon any requests made for indemnification or payment from the settlement fund." *Orthopedic Bone Screw*, 176 F.R.D. at 167. At issue is application of the indemnification provision.

### B.

Melissa Lloyd is a West Virginia resident who had surgery involving bone screw implantation on December 14, 1996.

---

1. Appellants contest this finding, claiming that AcroMed was subsequently sold for a considerably higher price.

In 1999, she sued AcroMed in West Virginia state court, alleging she had not received notice of the national class action settlement. AcroMed removed the case to federal court, seeking to have it joined with MDL 1014. The attempt to keep it in federal court failed. *See Lloyd v. Cabell Huntington Hosp., Inc.*, 58 F. Supp. 2d 694 (S.D. W. Va. 1999). Following remand, AcroMed filed a motion to show cause why Lloyd and her counsel should not be held in contempt for prosecuting the state court action. AcroMed contended that Lloyd was a class member and, as such, was subject to the District Court's injunction against class members filing actions separate from the class action.

The District Court agreed, concluding that Lloyd was a class member, and holding her in contempt. The only sanction the District Court imposed was an injunction against further prosecution of the West Virginia case. Lloyd appealed that ruling. Before the appeal was decided, however, Lloyd and AcroMed reached a settlement, under which AcroMed paid Lloyd $200,000—several times more than class members received under the class settlement.

AcroMed then sought indemnification from the settlement fund for the costs of the Lloyd settlement. It also requested that $1 million be set aside in the settlement contingency fund for future indemnification of similar collateral actions. The Plaintiffs' Legal Committee did not oppose these requests, both of which the District Court granted.[2]

Appellants are six class members who object to the indemnification of the Lloyd settlement, as well as the $1 million set-aside. After the District Court had granted the indemnification, the Custer Objectors moved to alter or amend the District Court's order under Fed. R. Civ. P. 59(e). The objectors contended that indemnification was not "reasonable" under Judge Bechtle's prior interpretation; that Lloyd was not a settlement class member with settled claims, so not within the indemnification provisions; and that any interpretation of the provision that would cover

---

2. MDL 1014 was presided over by Judge Louis Bechtle from its inception. By the time of the indemnification motion, however, Judge Bechtle had retired. The case was reassigned to Judge Ronald L. Buckwalter.

Lloyd was at odds with general class action principles. The District Court denied their motion.

## II.

As noted, the District Court's order approving the AcroMed Fed. R. Civ. P. 23(b)(1)(B) class action settlement is final and unappealable. Any challenges to the legality of the settlement agreement itself, including the indemnification provision, are no longer timely. The indemnification provision is valid and binding on the parties. To the extent the objectors challenge not the provision itself, but the interpretation and application of it to the Lloyd case, however, the finality of the agreement does not prevent review.[3]

---

3. AcroMed contends the challenge to the Lloyd indemnification is moot, because the payment has already been made. But that payment did not resolve the dispute; it is the subject-matter of the dispute itself. The objectors claim that the payment made to Lloyd cost them money to which they are entitled. AcroMed's citation to a case in which an insurance company resolved the underlying dispute by paying a claim is inapposite. *See Phillips v. Cheltenham Township*, 575 F.2d 72, 73-74 (3d Cir. 1978). In *Phillips*, the defendant lacked specific injury, *id.* at 73, while objectors here claim they will receive less money due to the application of the indemnification provision. AcroMed further claims the challenge to the set-aside is not yet ripe, as that money has not been paid out to anyone, and the money may be used for cases of a kind not challenged here. As noted, the challenge to the reserves depends on the objectors' challenge to the Lloyd case. If the Lloyd indemnification is acceptable, then the objectors lack a basis for challenging the $1 million reserve. Because we conclude the Lloyd indemnification was reasonable, we need not resolve this question.

We have some doubt whether objectors have standing to represent the interests of the settlement class in challenging the application of settlement terms previously agreed to by the Plaintiffs' Legal Committee. This issue was not fully briefed by the parties. However, because objectors likely have standing to challenge the application of the indemnification provision on their own behalf, we will reach the merits of their argument. The Supreme Court recently held that a nonnamed member of a class who objected at the fairness hearing could appeal the approval of the settlement without moving to intervene in the case. *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002). Objectors here neither

We review the District Court's construction of the provision de novo. *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 79 (3d Cir. 1982). But as noted, the provision itself grants a measure of discretion to the District Court in determining when indemnification is appropriate. To the extent we review such a determination, we review for abuse of discretion.

## III.

After the settlement was approved and final, the Supreme Court enunciated a narrow view of acceptable limited-fund class settlements, *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), raising the question whether this settlement would have been approved under current class action doctrine. *See In re Orthopedic Bone Screw Prods. Liab. Litig. (Sambolin)*, 246 F.3d 315, 317 n.3 (3d Cir. 2001) ("Since [the settlement approval], the 'limited fund' of a defendant to meet claims has been substantially circumscribed by the Supreme Court as a basis for the maintenance of a class action."). Nevertheless, the AcroMed Settlement is an agreement approved by a final, and now unappealable, order that binds all of the parties to the present dispute. To the extent the objectors wish to challenge the indemnification provision itself, their opportunity to do so was at the approval stage and on appeal from that order, and has now long passed. *See Hodge v. Hodge*, 621 F.2d 590, 591-93 (3d Cir. 1980) (finding res judicata barred challenges to order enforcing terms of settlement).

The only question before us, then, is whether the indemnification provision was properly applied in this case. The Lloyd matter appears to fall within the language of the indemnification provision. The provision permits requests for reasonable costs associated with "defending, settling, or

---

objected at the fairness hearing nor appealed the settlement, which is now final. In *Scardelletti*, however, the Court declined to frame the issue as one of standing, but rather as "whether petitioner should be considered a 'party' for the purposes of appealing the approval of the settlement." *Id.* at 7. Objectors here do not qualify as a party for purposes of appealing the original settlement.

satisfying judgments entered in any claim or proceedings involving Settled Claims of Settlement Class Members . . . that are not terminated as a result of this Agreement or that are filed in the future despite this Agreement." At issue is whether Lloyd was a "settlement class member," and whether her claims were "settled claims" within the meaning of the agreement.

These are both defined terms in the agreement. Lloyd falls squarely within the definition of a settlement class member, as one who has a claim relating to bone screws implanted in the United States before December 31, 1996. And "any and all Orthopedic Bone Screw Related claims" by settlement class members are "settled claims" under the agreement. Consequently, Lloyd is a settlement class member, whose claim in West Virginia is one of the "settled claims." AcroMed is entitled to seek compensation for the costs of defending and settling such claims "that are not terminated as a result of this Agreement or that are filed in the future despite this Agreement."

Objectors maintain that Lloyd was not a settlement class member for purposes of the indemnification provision. Contending she never received adequate notice of the class certification and settlement, objectors argue that Lloyd was not subject to the jurisdiction of the District Court and was never a proper party to the action. The objectors' argument, in other words, is that even though Lloyd appears to fall under the agreement's definition of a settlement class member, she is not within this group, all things considered, because of the operation of due process and jurisdictional constraints. And because her claims were not, in fact, settled by the agreement, her claims allegedly were not "settled claims," despite the definition in the agreement.

We disagree. The objectors' interpretation cannot be squared with the entire indemnification provision. The provision expressly recognizes "Settled Claims . . . that are not terminated as a result of this Agreement." It must, therefore, be possible for a claim to be a "Settled Claim" without, in fact, being settled by the agreement.[4] And the

_____

4. We note that in referring to settlement class members and settled claims, the indemnification provision places both in capital letters, clearly indicating that they are meant to refer to the agreement's definition of those terms.

reason such claims might not be terminated would presumably be the kinds of reasons Lloyd claimed exempted her from the settlement. Lloyd's action is precisely the kind of action the agreement appears to contemplate as at least a candidate for indemnification.

As noted, however, the provision is limited to "reasonable" costs associated with such cases. Objectors contend that, giving "reasonable" the "strict and narrow" interpretation the District Court insisted upon in approving the settlement, the indemnification of the Lloyd settlement, and cases like it, is not reasonable.[5] At the same time, however, objectors do not press the argument that the amount of money paid for Lloyd's suit was unreasonable. The amount Lloyd received was substantially higher than she would have received as a class member, and was fully indemnified from the settlement fund. Nevertheless, $200,000 is not unreasonable on its face, and there is nothing in the record on which to challenge its reasonableness. In any event, the objectors' primary argument is that it was unreasonable to view Lloyd's case as an appropriate candidate for indemnification at all.

Fundamental to this argument is objectors' contention that in approving the AcroMed Settlement under Rule 23(b)(1)(B), the District Court's finding of a limited fund was erroneous. This argument rests on a challenge to the propriety of the settlement agreement and its terms, including the indemnification provision. As such, it can no longer be raised. As noted, the settlement agreement has been approved in a final, unappealable order. For the same reason, judicial decisions circumscribing mass-tort limited-fund class action settlements decided after the agreement

---

5. We note that when the District Court approved the indemnity provision, it emphasized that the "overriding" purpose of the agreement was to maximize the recovery for the class members. Of course, any money drawn from the fund to satisfy the indemnification provision would reduce class members' recovery. But an indemnity provision in a limited-fund case makes sense. Where the fund is truly limited, the defendant may not have additional money to defend collateral suits, and those suits may threaten the entirety of the fund. In this sense, indemnification provisions appear reasonable in limited-fund cases.

was reached cannot alter what is "reasonable" under the agreement.

The Lloyd case falls squarely within the definition of cases eligible for indemnification under the agreement. Therefore, we see no basis for overturning the District Court's judgment that this was a reasonable request.

For the foregoing reasons, we will affirm the orders of the District Court.

A True Copy:
 Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*