**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GILBERT SAUCILLO; JAMES R. RUDSELL, on behalf of themselves and all others similarly situated, *Plaintiffs-Appellees*, | No. 20-55119 |
| | D.C. No. 5:10-cv-00809-VAP-OP |

GILBERT SAUCILLO; JAMES R.
RUDSELL, on behalf of themselves
and all others similarly situated,
          *Plaintiffs-Appellees*,

and

JOHN BURNELL; JACK POLLOCK,
          *Plaintiffs*,

v.

LAWRENCE PECK,
          *Objector-Appellant*,

v.

SWIFT TRANSPORTATION COMPANY
OF ARIZONA, LLC, an Arizona
corporation,
          *Defendant-Appellee*,

and

SWIFT TRANSPORTATION COMPANY
INCORPORATED; DOES,
          *Defendants*.

GILBERT SAUCILLO; JAMES R.
RUDSELL, on behalf of themselves
and all others similarly situated,
            *Plaintiffs-Appellees*,

            and

JOHN BURNELL; JACK POLLOCK,
                        *Plaintiffs*,

                v.

SADASHIV MARES,
            *Objector-Appellant*,

                v.

SWIFT TRANSPORTATION COMPANY
OF ARIZONA, LLC, an Arizona
corporation,
            *Defendant-Appellee*,

            and

SWIFT TRANSPORTATION COMPANY
INCORPORATED; DOES,
                *Defendants.*

No. 20-55159

D.C. No.
5:10-cv-00809-
VAP-OP

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted April 16, 2021
Pasadena, California

Filed February 11, 2022

Before: MILAN D. SMITH, JR. and SANDRA S. IKUTA,
Circuit Judges, and JOHN E. STEELE,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### Class Action Settlement / CA Private Attorney General Act

The panel dismissed an objector's appeal of the district court's approval of a California Private Attorney General Act ("PAGA") settlement, vacated the district court's approval of the class-action settlement, and remanded for further proceedings.

Plaintiffs and Swift Transportation Company reached a settlement pertaining to plaintiffs' class claims, alleging violations of California labor law, and claims brought pursuant to PAGA, which allows private citizens to recover civil penalties on behalf of themselves "and other current or former employees" for violations of the California Labor

---

[*] The Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Code. Lawrence Peck and Sadashiv Mares filed separate objections to the settlement agreement. The district court overruled the objections, and gave final approval of the settlement.

The panel held that Peck may not appeal the PAGA settlement because he was not a party to the underlying PAGA action. The PAGA claim was brought by two private plaintiffs, and Peck was not a party to the PAGA action. Accordingly, the panel held that Peck failed to show that he had any right to appeal the district court's approval of the PAGA settlement. The panel rejected Peck's arguments as to why he may appeal the PAGA settlement anyway. Although Peck is a class member of the class action, a PAGA action is distinct from a class action, and objectors to a PAGA settlement are not "parties" to a PAGA suit in the same sense that absent class members are "parties" to a class action. The fact that Peck may ultimately receive a portion of the PAGA settlement did not make him a party to the lawsuit. Moreover, a PAGA action has "no individual component." Finally, although Peck has a separately filed PAGA action, that does not make him a party to this PAGA case. The panel dismissed Peck's appeal and did not consider whether the district court erred in approving the PAGA settlement.

The panel next considered the objection to the class action settlement. Mares contends that because the district court approved the settlement before certifying a class, the court should have applied a heightened standard of review.

Swift argued that the panel could not reach the merits of Mares's objection because he did not raise such an objection in the district court. Mares countered that "he could not pre-object" to the district court employing the incorrect legal

standard.  The panel held that when the district court considered an issue in its final order approving a class action settlement, the issue was not waived on appeal even if no objector to the settlement raised that issue to the district court.  Therefore, Mares did not, and could not, waive his objection to the legal standard employed by the district court in its final order.

Concerning the proper legal standard for the class action settlement, the panel held that the district court erred in applying a presumption that the settlement was fair and reasonable, and the product of a non-collusive, arms-length negotiation.  The district court applied the presumption that this court reversed in *Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (holding that "[w]here . . . the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may be normally required under Rule 23(e)").  The panel rejected attempts to distinguish the district court's order from the decision in *Roes*.  The panel held further that the district court's error was not harmless.  Applying the erroneous presumption cast a shadow on the entirety of the district court's order.  The panel vacated the district court's approval of the class-action settlement.  The panel remanded so that the district court could make findings in accordance with the applicable heightened standard.  The panel offered no opinion as to the merits of Mares's allegations.

**COUNSEL**

Neal J. Fialkow (argued) and James S. Cahill, Law Office of Neal J. Fialkow Inc., Pasadena, California, for Objector-Appellant Lawrence Peck.

Joseph Clapp (argued), Aiman-Smith & Marcy, Oakland, California, for Objector-Appellant Sadashiv Mares.

Deepak Gupta (argued) and Urja Mittal, Gupta Wessler PLLC, Washington, D.C.; James R. Hawkins and Gregory Mauro, James Hawkins APLC, Irvine, California; Stanley D. Saltzman, Marlin & Saltzman LLP, Agoura Hills, California; for Plaintiffs-Appellees.

Paul S. Cowie (argued), Karin Dougan Vogel, and John D. Ellis, Sheppard Mullin Richter & Hampton LLP, San Francisco, California, for Defendant-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Gilbert Saucillo and James Rudsell (Plaintiffs) are plaintiffs in actions brought against Swift Transportation Company of Arizona and associated entities and individuals (Swift). In 2019, after years of litigation, Plaintiffs and Swift reached a settlement pertaining to Plaintiffs' class claims and claims brought pursuant to the California Private Attorneys General Act (PAGA), Cal. Lab. Code §§ 2698 *et seq.*, which allows private citizens to recover civil penalties on behalf of themselves "and other current or former employees" for violations of the California Labor Code. Cal. Lab. Code § 2699(a). Lawrence Peck and Sadashiv Mares filed

objections to the settlement agreement. Peck objected to the PAGA portion of the settlement, while Mares argued that the monetary award for the class claims was not fair and reasonable. The district court overruled both sets of objections and gave final approval to the settlement.

We hold that Peck may not appeal the PAGA settlement because he is not a party to the underlying PAGA action, and so we dismiss his appeal. However, we vacate the district court's approval of the class action settlement agreement and remand the class action for further proceedings, as we agree with Mares that the district court abused its discretion by applying an incorrect legal standard when evaluating the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Facts

Swift is a trucking company that operates throughout the United States. In September 2009, John Burnell, a former Swift driver, informed the California Labor and Workforce Development Agency (LWDA) of Swift's alleged violations of California labor law. Burnell specifically claimed that Swift was violating California Labor Code § 2802, which requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of his or her duties . . . ." Cal. Lab. Code § 2802(a). The next month, LWDA informed Burnell that it would not investigate the claim. In October 2010, another former Swift driver, Jack Pollock, sent a letter to LWDA asserting various violations of California labor law, including § 2802. Pollock's letter purportedly "serve[d] as an update to [Burnell's] correspondence."

## II. District Court Proceedings

In February 2010, Burnell filed a class action against Swift in California state court alleging various wage and hour violations pursuant to California law.  In June 2010, Swift removed the case to federal court.  Burnell then amended the complaint in October 2010, adding Pollock as a named plaintiff.  The amended complaint asserted both an independent cause of action pursuant to § 2802 and a PAGA cause of action.  Pollock subsequently withdrew as a named plaintiff, and Burnell then filed another amended complaint, this time adding Saucillo as a named plaintiff.  In 2016, the district court denied a motion by Burnell and Saucillo for class certification. *Burnell v. Swift Transp. Co of Ariz.*, *LLC*, No. EDCV10809VAPSPX, 2016 WL 2621616, at \*1 (C.D. Cal. May 4, 2016)**.**  We denied a petition for permission to appeal pursuant to Federal Rule of Civil Procedure 23(f). Eventually, the district court granted Swift's motion for partial judgment on the pleadings, but we vacated that ruling after issuing *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014).

In 2012, Rudsell, another Swift driver, sent his own letter to the LWDA, similarly alleging that Swift had violated various California labor laws.  Rudsell did not specifically cite § 2802, nor did his complaint, which he attached to the letter.  Rudsell next filed an amended complaint, and Swift eventually removed Rudsell's suit to federal court.  The district court stayed Rudsell's suit while Burnell's action was pending.  Rudsell never moved for class certification.

In May 2019, Burnell, Saucillo, and Rudsell reached a settlement with Swift pertaining to the class claims and PAGA claims in both their suits.  The settlement provided that Swift would pay $7,250,000 for the class claims, $2,416,666.66 for attorneys' fees, and $500,000 for the

PAGA claim.  Pursuant to PAGA, $375,000 (75%) would be paid to the LWDA, and $125,000 (25%) would be paid to aggrieved employees.  *See* Cal. Lab. Code § 2699(i).

Upon the instruction of the district court, Plaintiffs[1] filed a new, consolidated complaint in June 2019.  In the consolidated complaint, Plaintiffs alleged that Swift violated § 2802.  Plaintiffs also asserted a PAGA cause of action that "incorporate[d] each and every one of the allegations contained in the preceding paragraphs of [the consolidated] Complaint."  The parties submitted a copy of the settlement agreement to the LWDA, in accordance with PAGA.  *See* Cal. Labor Code § 2699(l).  The LWDA did not object to the settlement.

Peck and Mares, two Swift drivers, objected to the proposed settlement.  Both Peck and Mares had filed their own suits against Swift.  Peck filed a PAGA complaint in California state court, while Mares filed a class action.[2]

Despite these objections, the district court granted final approval to the settlement agreement in January 2020.  In outlining the legal standard by which to evaluate the agreement, the district court wrote:

> As previously found by this Court, the parties engaged in arm's-length, serious, informed,

---

[1] On the same day that Plaintiffs filed the consolidated complaint, they also removed Burnell as a class representative.  Thus, only Saucillo remained as a class representative for Burnell's suit.

[2] The district court denied class certification and granted Swift's motion for summary judgment in Mares's case.  His case is on appeal to this court, but is stayed pending the outcome of this case.  *See Mares v. Swift Transp. Co., Inc.*, No. 19-55065.

and non-collusive negotiations between experienced and knowledgeable counsel. Additionally, the Settlement Agreement was reached after mediation with a neutral mediator, Mark Rudy.   The Settlement Agreement is therefore presumptively the product of a non-collusive, arms-length negotiation. *See Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017) (holding that a settlement that is the product of an arm's-length negotiation "conducted by capable and experienced counsel" is presumed to be fair and reasonable); *Satchel v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). This factor weighs in favor of approval.

(Some citations omitted.)  The district court then evaluated the agreement pursuant to the eight-factor test in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[3]

---

[3] The Federal Rules of Civil Procedure were amended in 2018 to list factors a district court should consider when evaluating a class action settlement agreement.  *See* Fed. R. Civ. P. 23(e)(2).  Because we vacate the district court's approval of the settlement agreement in this case for reasons unrelated to the *Hanlon* or Rule 23(e)(2) factors, we need not reach the question as to how district courts should incorporate the Rule 23(e)(2) factors into their analyses.  *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 n.10 (9th Cir. 2020); *see also Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-CV-00580-AC, 2019 WL 6893018, at *3 (D. Or. Nov. 26, 2019) (Acosta, M.J.), *report and recommendation*

The district court rejected the objections raised by Peck and Mares.  Peck argued that "the class representatives lack standing to settle the PAGA clam, as they allegedly failed to exhaust certain administrative procedures before bringing the present lawsuit."  The district court dismissed this argument because "'[f]ailure to exhaust administrative remedies under the PAGA is an affirmative defense subject to waiver' rather than a prerequisite to standing."  (Citations omitted.)

Mares contended that the monetary award in the settlement was "inadequate for several reasons, the common theme of which is that he believes the parties' estimate of [Swift's] maximum possible exposure is too low."  The district court concluded that the settlement agreement was fair and reasonable, and that the parties' calculation of Swift's possible exposure was accurate.  The district court granted final approval to the settlement agreement for both the class claims and the PAGA claim, though the court reduced the attorneys' fees.

## III.    Developments on Appeal

Peck raises his same objection on appeal, while Mares now argues that the district court applied an incorrect presumption that the settlement agreement was the product of arm's-length negotiations.  Both appeals were fully briefed, oral argument was held, and both Peck's and Mares's cases were submitted in April 2021.

Approximately one month later, we decided *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021),

---

*adopted*, No. 3:16-CV-00580-AC, 2019 WL 6840844 (D. Or. Dec. 16, 2019).

which concluded that the plaintiff—Roderick Magadia—lacked Article III standing[4] to bring a "meal-break claim" under PAGA "because he did not suffer an injury himself." *See id.* at 672.[5]   This conclusion flowed from *Magadia*'s core holding that plaintiffs seeking penalties under PAGA for California labor law violations must satisfy the traditional Article III standing requirement of an injury in fact. *See id.* at 678 ("[W]e hold that Magadia lacks standing to bring a PAGA claim for Walmart's meal-break violations since he himself did not suffer injury.").   We noted that there is an exception to the injury-in-fact requirement for so-called *qui tam* statutes, which allow private plaintiffs to sue on behalf of the government in order to vindicate a public right even if they have not personally been injured by unlawful conduct.   *Id.* at 674.   *Magadia* recognized that "PAGA has several features consistent with traditional *qui tam* actions." *Id.* at 675.   However, we also explained that "PAGA differs in significant respects from traditional *qui tam* statutes," *id.* at 676, and so ultimately held that PAGA was not "*qui tam* for purposes of Article III" because its features "depart from the traditional criteria of *qui tam* statutes," *id.* at 678.

---

[4] Article III standing "limits the category of litigants empowered to maintain a lawsuit in federal court" to those who have suffered a judicially redressable injury.   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).   Without such an injury, federal courts lack jurisdiction to entertain the plaintiff's lawsuit.   *See id.*

[5] We also held that Magadia had standing to bring "two wage statement claims" under California Labor Code § 226(a), *id.* at 678, and that "other class members who can establish § 226(a) injuries have standing to collect damages," *id.* at 680, though we did not directly address standing under PAGA for those claims.   We concluded that the wage-statement claims failed on the merits.   *See id.* at 680–82.

After this decision was filed, we directed the parties to file supplemental briefs addressing *Magadia*'s impact with respect to Plaintiffs' standing to sue under PAGA. We also asked for a discussion of the following issues:

> [T]he parties shall give their views as to whether Plaintiffs-Appellees suffered an injury in fact, and whether that injury in fact gives Plaintiffs-Appellees the ability to seek relief on behalf of other current or former employees in light of our previous holding that a PAGA claim cannot be brought as a class action under the Class Action Fairness Act. The parties shall also give their views as to whether the current and former employees, on whose behalf the Plaintiffs-Appellees filed their PAGA action, have also suffered an injury in fact in light of the language in Section 2699(g)(1) of the California Labor Code providing that a PAGA plaintiff may recover the civil penalty in a civil action "filed on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed," and the language in in Section 2699(i) providing that 25 percent of the civil penalties recovered are allocation "to the aggrieved employees." Finally, the parties shall address whether current and former employees who may receive part of the penalties recovered must themselves have Article III standing, given that such employees are not parties before the court

because a PAGA claim cannot be brought as
a class action.

(Cleaned up.)

We have reviewed the parties' supplemental briefs, as well as the parties' letters directing us to additional, recent authorities. For the reasons given in Part I of our discussion below, we conclude that we have no occasion to reach many of these issues.

## DISCUSSION

The cases before us include both a class action and a representative PAGA action. As explained below, these two actions are distinct, with different parties and procedures. Consequently, we address each action separately.

## I. Objections to the PAGA Settlement

In renewing his objection to the district court's approval of the PAGA portion of the settlement, Peck identifies three potential errors made by the district court: (1) Rudsell and Saucillo lack standing to enter into the PAGA settlement because they allegedly did not ask the LWDA to investigate a potential § 2802 violation; (2) the PAGA release is overbroad; and (3) the $500,000 PAGA penalty is too small.[6] Swift counters that Peck lacks standing to object to such a settlement, and that Peck may not appeal the settlement in any event because he is a non-party to the

---

[6] Peck also argues that the district "court did not respond to Peck's objections," which he contends is an abuse of discretion. Peck's argument on this topic is extremely brief and only references the same issues noted above.

underlying litigation.  We agree with the latter contention, and so we must dismiss Peck's appeal.

## A.  Right to Appeal a PAGA Settlement

The PAGA claim before us was brought by two private plaintiffs, Saucillo and Rudsell.  Although Peck brought his own PAGA claim in a different case, he is not a party to the PAGA action here.  "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled," and so Peck has failed to show that he has any right to appeal the district court's approval of the PAGA settlement here.  *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020) (quoting *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)); *see also* Fed. R. App. P. 3(c)(1)(A) (notice of appeal must "specify the *party* or *parties* taking the appeal" (emphasis added)).

Peck raises several arguments as to why he may appeal the PAGA settlement anyway.  None of them has merit. First, he argues that because he is a class member of the class action, he may also object to the PAGA action.  However, as indicated above, a PAGA action is distinct from a class action.  A class member may appeal from approval of a class-action settlement, because he "has an interest in the settlement" and the "legal rights he seeks to raise are his own." *Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002).  "But a representative action under PAGA is not a class action. There is no individual component to a PAGA action because *every* PAGA action is a representative action on behalf of the state.  Plaintiffs may bring a PAGA claim *only* as the state's designated proxy . . . ." *Kim v. Reins Int'l Cal., Inc.*, 459 P.3d 1123, 1130–31 (Cal. 2020) (cleaned up); *see also Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851, 856 (9th Cir. 2020) (stating that "PAGA causes of action [are]

nothing like Rule 23 class actions," and holding that in a PAGA suit, "an aggrieved employee[] has no individual claim of her own and is not seeking individual relief").

To put a finer point on it:

> Nonnamed class members are parties to [class action] proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their *own* interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court.

*Devlin*, 536 U.S. at 10 (emphasis added).

Conversely, while "a judgment from a PAGA suit binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government . . . without an opportunity to opt out," that preclusive effect extends only to an employee's ability to seek "civil penalties" under PAGA. *Canela*, 971 F.3d at 851 (citations and internal quotation marks omitted). "[U]nlike class action judgments that preclude all claims the class could have brought under traditional res judicata principles, employees [precluded from bringing a PAGA claim] retain all rights to pursue or recover other remedies available under state or federal law." *Id.* (citations and internal quotation marks omitted). That is consistent with PAGA's "remedial scheme," which is "different" than a class action: while class actions typically seek compensation for individual wrongs,

PAGA is a delegation of California's power to enforce its labor laws to private parties. *Id.* at 852; *accord Iskanian v. CLS Transportation Los Angeles, LLC*, 327 P.3d 129, 147 (Cal. 2014) (citing *Arias v. Superior Court*, 209 P.3d 923, 933 (Cal. 2009)); *Robinson v. S. Ctys. Oil Co.*, 267 Cal. Rptr. 3d 633, 637–38 (Cal. Ct. App. 2020). Because they have no comparable individual stake, objectors to a PAGA settlement are not "parties" to a PAGA suit in the same sense that absent class members are "parties" to a class action.

Relatedly, Peck argues that he may appeal because he may be entitled to some part of the PAGA award as an aggrieved employee. This argument also fails. The fact that Peck may ultimately receive a portion of the PAGA settlement does not make him a party to the lawsuit. Analogously, in class action settlements, "Federal district courts often dispose of . . . unclaimed [funds] by making what are known as *cy pres* distributions," *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 473 (5th Cir. 2011), which generally go to charitable organizations. *See, e.g.*, *In re Google Inc. St. View Elec. Commc'ns Litig.*, — F.4th —, 2021 WL 6111383, at *6 (9th Cir. 2021); *Lane v. Facebook, Inc.*, 696 F.3d 811, 822 (9th Cir. 2012). In such cases, proceeds from the settlement go "to a third party," *Klier*, 658 F.3d at 475, not to the named plaintiffs or absent class members who are parties to the underlying litigation.

Moreover, a PAGA action has "no individual component." *Kim*, 459 P.3d at 1131; *see also Canela*, 971 F.3d at 852 (describing civil penalties allocated to aggrieved employees as an incentive to bring an enforcement suit, and not as restitution for harm suffered). The aggrieved employees' 25% portion of the PAGA proceeds "is not restitution for wrongs done to members of the class" but is instead "an incentive to perform a service to the state."

*Canela*, 971 F.3d at 852 (citation and internal quotation marks omitted); *see also Magadia*, 999 F.3d at 675 (noting that "a PAGA plaintiff must give the 'lion's share' (75%) of the civil penalties recovered to the LWDA" (citing Cal. Lab. Code § 2699(i))).  In other words, Peck does not receive a portion of the PAGA settlement because of any injury, but instead because the California legislature made a policy choice that the bounty that normally serves as the incentive for the plaintiff to bring the suit should instead be shared with all aggrieved employees.

We do not view this reasoning as inconsistent with statements in *Magadia* suggesting that "PAGA . . . creates an interest in penalties, not only for California and the plaintiff employee, but for nonparty employees as well," and disagreeing with "the notion that the aggrieved employee is solely stepping into the shoes of the State rather than also vindicating the interests of other aggrieved employees." 999 F.3d at 676–77.  *Magadia* addressed the narrow question of whether PAGA "hew[ed] closely to the traditional scope of a *qui tam* action . . . under Article III," thereby allowing an "uninjured plaintiff to maintain suit" in federal court.  *Id.* at 675.  More precisely, *Magadia* was concerned with whether "PAGA's features diverge from" a specific "assignment theory of *qui tam* injury" articulated by the Supreme Court in *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000).  999 F.3d at 678. That is an altogether different inquiry than whether Peck's right to share in settlement proceeds makes him an actual party to the underlying PAGA suit.  *Cf. Johnson v. Maxim Healthcare Servs., Inc.*, 281 Cal.Rptr.3d 478, 484 & n.4 (Cal. Ct. App. 2021) (holding that *Magadia* was "not instructive" on PAGA standing question because it addressed only "standing under Article III of the United States Constitution and does not address *Kim* whatsoever").

Indeed, *Magadia* expressly distinguished itself from other Ninth Circuit cases on these grounds. *See* 999 F.3d at 678 n.6. In any event, as discussed above, the fact that Peck might have some interest in the outcome of Saucillo's and Rudsell's PAGA lawsuit does not make him a "party" to that suit.

Finally, Peck argues that his separately filed PAGA action gives him standing to object and to appeal in Saucillo's and Rudsell's case. But maintaining a parallel action does not change the fact that Peck is not a party to the PAGA lawsuit brought by Saucillo and Rudsell. *See Kim*, 459 P.3d at 1130 ("[A] PAGA claim is an enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government.").

## B.  Conclusion

Because Peck lacks the right to appeal the PAGA settlement, we dismiss his appeal and do not consider whether the district court erred in approving the PAGA settlement. *See Baranowicz v. Comm'r of Internal Revenue*, 432 F.3d 972, 976 (9th Cir. 2005). Two final observations are warranted. First, Peck did not move to intervene in the cases before us. *See* Fed. R. Civ. P. 24. Consequently, we do not address whether he could have been permitted to intervene, raise objections to the PAGA settlement, and then pursue those objections on appeal. *Cf. Uribe v. Crown Bldg. Maint. Co.*, 285 Cal. Rptr. 3d 759, 770 (Cal. Ct. App. 2021), *as modified* (Oct. 26, 2021). Second, we have occasionally allowed a non-party to appeal when "exceptional circumstances" warrant a departure from this general rule. *Volokh*, 945 F.3d at 1241 (citation omitted). "We have allowed such an appeal only when (1) the appellant, though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the

appeal." *Id.* (quoting *Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004)); *see, e.g.*, *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1441 (9th Cir. 1987) (declining to apply this exception because appellant's "prejudgment activity . . . was nonexistent"). Peck does not argue that this exception applies here, and so we express no opinion on whether a PAGA settlement objector could invoke it in an appropriate appeal.

## II. Correct Legal Standard for the Class Action Settlement

"We review a district court's approval of a class action settlement for clear abuse of discretion. Such review is extremely limited, and we will affirm if the district judge applies the proper legal standard and his findings of fact are not clearly erroneous." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011) (internal citation and quotation marks omitted). However, "[a]pplying the incorrect legal standard is an abuse of discretion." *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) ("A district court clearly abuses its discretion by either failing to apply the correct legal standard or by making clearly erroneous factual determinations.").

To the district court, Mares objected to the size of settlement for the class claims, believing that it was inadequate. Mares does not renew his same objections on appeal. Instead, he now argues that "the district court erroneously applied a presumption of fairness." Mares contends that because the district court approved the settlement before certifying a class, the court should have applied a heightened standard of review, in line with our decision in *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035

(9th Cir. 2019).  Mares additionally highlights what he believes are six signs of self-interest on the part of Plaintiffs and Swift.

## A.  Waiver

Swift first argues that we cannot reach the merits of Mares's objection because he did not raise such an objection in the district court.  Generally, an objector to a class action settlement must raise an issue before the district court if he or she wishes to preserve it for appeal.  *See Devlin*, 536 U.S. at 9.  However, "[s]uch waiver is a discretionary, not jurisdictional, determination.  We may consider issues not presented to the district court, although we are not required to do so."  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (internal citation omitted).

Mares concedes that he did not raise this particular objection to the district court, but he argues that "he could not pre-object" to the district court employing the incorrect legal standard.  In other words, Mares believes that an objector cannot waive an objection to the district court's application of an incorrect legal standard.  For support, Mares highlights the following passage from the Newberg treatise on class actions:

> The sole exception to the requirement that only issues raised below may be appealed is that issues that surface for the first time in the court's final order may be appealed even if they were not the basis for an objection.  For example, if the trial court applied the wrong legal standard in granting final approval or made some other error that had not existed prior to the objection deadline, the waiver doctrine does not apply.  Because the issue

was not available to be objected to until final judgment, the parties and objectors did not "waive" objections by not objecting prior to that time.

4 Newberg on Class Actions § 14:18 (5th ed.).

We do not adopt this language verbatim.[7]  However, we agree that when "the district court considered [an] issue" in its final order approving a class action settlement, the issue is "not waived on appeal" even if no objector to the settlement raised that issue to the district court.[8]  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1108 (9th Cir. 2016) (citing *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007)); *see also Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) ("[W]e have the authority to identify and apply the correct legal standard, whether argued by the parties or not.").  In other words, an objector need not be an oracle and predict issues that will arise for the first time in the district court's final order.

---

[7] Specifically, it is unclear that the Newberg treatise is correct in referring to "issues that surface for the first time in the [district] court's final order" as the "sole exception" to ordinary waiver principles in this context. *Id.*  Our cases suggest other exceptions may exist. *See, e.g.*, *United States v. Northrop Corp.*, 59 F.3d 953, 957 n.2 (9th Cir. 1995) ("[E]ven if the precise issue we face has been raised for the first time on appeal, the waiver rule is not one of jurisdiction, but discretion.  We can exercise that discretion to consider a purely legal question when the record relevant to the matter is fully developed." (citations omitted)).

[8] For judicial efficiency, an objector might raise such an issue in a motion pursuant to Federal Rules of Civil Procedure 59(e) or 60(b), but such actions are not necessary to preserve the issue for appeal.

The district court's order granting preliminary approval to the settlement agreement noted that the negotiations were conducted at "arms-length." However, the district court did not state in its preliminary approval order that it was applying a presumption that the agreement was non-collusive. The district court did use such language in its order granting final approval. Because the district court did not apply the presumption before its final order, Mares had no reason to make the objection he now makes on appeal. Therefore, Mares did not (and could not) waive his objection to the legal standard employed by the district court in its final order.

## B. The District Court's Legal Standard

In *Roes*, the district court approved a settlement "in the absence of a certified class." 944 F.3d at 1039. On appeal, objectors to the settlement "contend[ed] that the district court was required to, but did not, apply heightened scrutiny of the settlement after being faced with several indicia of collusion." *Id.* at 1048. We held that "[w]here . . . the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Id.* (citation and internal quotation marks omitted). We did not announce a new rule in *Roes*, but rather reiterated a number of our previous holdings. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012); *Bluetooth*, 654 F.3d at 946; *Hanlon*, 150 F.3d at 1026. In *Roes*, we noted that we had adopted this rule "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a

duty to represent." *Roes*, 944 F.3d at 1049 (quoting *Lane*, 696 F.3d at 819) (some internal quotation marks omitted).

We specifically critiqued the language employed by the district court in *Roes*:

> Nowhere in the final approval order, however, did the district court cite or otherwise acknowledge our longstanding precedent requiring a heightened fairness inquiry prior to class certification. To the contrary, the district court declared that, "[w]here a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a *presumption that the settlement is fair and reasonable*." (Emphasis added.) But such a presumption of fairness is not supported by our precedent, and the district court cites no Ninth Circuit case which adopted this standard. Particularly in light of the fact that we not only have never endorsed applying a broad presumption of fairness, but have actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny—when it comes to settlements negotiated prior to class certification, the district court's declaration that a presumption of fairness applied was erroneous, a misstatement of the applicable legal standard which governs analysis of the fairness of the settlement.

*Id.* at 1048. Because the *Roes* district court both "misstate[d] the legal standard" and "failed to apply the correct legal

standard and to conduct the searching inquiry required," based on the record, we concluded that the district court abused its discretion. *Id.*[9] We then vacated the district court's approval of the settlement and "le[ft] the final fairness determination to the district court after an opportunity to apply the appropriate heightened review and further develop the record." *Id.* at 1050.

The district court here stated:

> As previously found by this Court, the parties engaged in arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel. Additionally, the Settlement Agreement was reached after mediation with a neutral mediator, Mark Rudy. The Settlement Agreement is therefore presumptively the product of a non-collusive, arms-length negotiation. *See Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017) (holding that a settlement that is the product of an arm's-length negotiation "conducted by capable and experienced counsel" is presumed to be fair and reasonable) . . . .

(Some citations omitted.) The district court not only applied the same presumption that we reversed in *Roes*, but it

---

[9] In *Roes*, we also "identif[ied] several aspects of the settlement that in our view cast serious doubt on whether the settlements me[t] the applicable fairness standard." 944 F.3d at 1050. Those possible signs of unfairness added support to our decision to vacate approval of the district court's settlement, but application of an incorrect legal standard alone constitutes an abuse of discretion. *See Campbell*, 951 F.3d at 1121.

actually cited the very language from the district court's order in *Roes* that we criticized. Having had not only the benefit of our decision in *Roes*, but also the cases preceding it applying the heightened standard, the district court should not have applied that presumption.

Swift and Plaintiffs attempt to distinguish the district court's order from our decision in *Roes* in a number of ways. First, Swift argues that *Roes* applies only to cases where a party never *sought* class certification. According to Swift, because "Saucillo moved for certification of a litigation class . . . , which the district court denied," the heightened legal standard does not apply. This argument is plainly at odds with our decision in *Roes*. We apply the heightened standard "in the absence of a certified class," not in the absence of a motion for class certification. *Roes*, 944 F.3d at 1039; *see also id.* at 1048 (applying the heightened standard "before the class has been certified"); *Lane*, 696 F.3d at 819 (applying the heightened standard "when . . . the settlement takes place before formal class certification"). Saucillo's unsuccessful motion for class certification meant there was an "absence of a certified class" and that the district court approved the settlement "before the class ha[d] been certified." *Roes*, 944 F.3d at 1039, 1048.

Next, Swift argues that the district court "held only that" the presumption of fairness "was a factor that *weighs in favor* of approval." Swift is correct that the district court noted that the presumption was a "factor" that "weighs in favor of approval." The district court then applied the *Hanlon* factors. However, the district court in *Roes* did the same thing, only for us to reverse. The *Roes* district court stated that it "be[gan] its analysis with a presumption that the settlement is fair and reasonable." *Roe*, 2017 WL 4073809, at *9 (citation and internal quotation marks omitted). The

*Roes* district court then evaluated the settlement pursuant to the *Hanlon* factors. *See id.* at \*9–11. Despite the district court in *Roes* only "begin[ning] its analysis with [the] presumption," *id.* at \*9, we reversed because "the district court's declaration that a presumption of fairness applied was erroneous, a misstatement of the applicable legal standard which governs analysis of the fairness of the settlement," *Roes*, 944 F.3d at 1049. The district court here did the same.

Plaintiffs also argue that we should ignore the district court's error, citing our decision in *Campbell*, 951 F.3d 1106, as authority for that proposition. There, we noted that the district court erred in applying a single factor from the three-factor list in *Bluetooth* that district courts should apply when a settlement is approved prior to class certification. *See Campbell*, 951 F.3d at 1125 (listing the *Bluetooth* factors). We held that "any error in the district court's discussion of" one of the factors was "harmless" because "[n]o one factor is dispositive." *Id.* at 1127. Unlike in *Campbell*, however, the district court here overlayed its entire discussion of the settlement agreement with the erroneous presumption. The district court never applied *Bluetooth* because it did not utilize the heightened standard for pre-class certification settlements. Although the district court stated that the presumption was a "factor," our precedent is clear that district courts *must* apply a more searching review for a pre-class certification settlement. *See Lane*, 696 F.3d at 819.

Swift additionally tries to distinguish *Roes* by arguing that the concerns underlying our decision are not present here, where "the parties actively litigated for several years, conducted comprehensive discovery, and contest certification of a litigation class on the merits." But the

procedural posture in *Roes* was similar. There, the plaintiffs brought a putative class action in 2014, and the parties actively litigated the case over a number of years, including engaging in mediation and attempting to compel arbitration. *See Roes*, 944 F.3d at 1039–40. We reversed despite this litigation history, and we do the same here. Furthermore, our holding in *Roes* announced a bright-line rule: district courts must apply a more searching legal standard "[w]here . . . the parties negotiate a settlement agreement before the class has been certified." *Id.* at 1048. We did not make any exceptions based on how long the parties have been litigating prior to approval of the settlement.

Finally, Swift and Plaintiffs ask us to affirm the district court's approval of the settlement despite application of an erroneous legal standard. We generally do not employ "a harmless error standard for class action settlement review." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 613 (9th Cir. 2018); *but see Campbell*, 951 F.3d at 1127. However, we have affirmed a district court's approval of a settlement, despite that court making an error. For example, in *Volkswagen*, we assumed that the district court failed to respond to a non-frivolous objection, which the district court was required to do. *See id.* at 612–13. Nevertheless, we affirmed the district court because "the objector's complaint appear[ed] to be purely technical—it dr[ew] no link between the district court's supposed oversight and any substantive deficiency in the settlement." *Id.* at 613.

Failure to respond to a "purely technical" objection, *id.*, is not analogous to employing an incorrect legal standard. The district court here began its analysis by applying the presumption that the settlement was "the product of a non-collusive, arms-length negotiation." Applying that

erroneous presumption cast a shadow on the entirety of the district court's order. The "district court's . . . oversight," *id.*, is at the very heart of Mares's objection on appeal.

"[W]hen a district court's findings are based upon an incorrect legal standard, the appropriate remedy is to remand so that findings can be made in accordance with the applicable legal standard." *Jeldness v. Pearce*, 30 F.3d 1220, 1231 (9th Cir. 1994). That is because "factfinding is the basic responsibility of district courts, rather than appellate courts." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982). We offer no opinion as to whether there is merit to Mares's allegations. On remand, the district might decide to once again approve the settlement pursuant to the correct legal standard, or it might not. We, however, cannot review the settlement in the first instance under the appropriate legal standard.

## CONCLUSION

We dismiss Peck's appeal of the district court's approval of the PAGA settlement because we conclude that his appeal is not properly before us. However, because the district court abused its discretion by employing an erroneous legal standard, we vacate its approval of the class-action settlement and remand for further proceedings consistent with this opinion. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 612 (9th Cir. 2021).[10]

---

[10] We have sometimes "reversed" settlement approval when the district court used the wrong legal standard, *see Nachshin v. AOL, LLC*, 663 F.3d 1034, 1042 (9th Cir. 2011), but "vacate" seems the more appropriate term here. It is not always clear when we should "vacate" rather than "reverse." *Cf. SCOTUS Style Manual on Difference Between "Reverse" and "Vacate,"* Josh Blackman Blog (Mar. 28, 2016),

**DISMISSED IN PART, VACATED AND REMANDED IN PART.**

---

https://joshblackman.com/blog/2016/03/28/scotus-style-manual-on-diff erence-between-reverse-and-vacate/ (positing, "Reverse is when things are really, really wrong.  Vacate is when it is somewhat wrong."). Terminology aside, the point is that the district court must apply the correct legal standard on remand in determining whether the parties' settlement should be approved.